UNITED STATES of America,
Plaintiff,

v.

FEDERATION OF PHYSICIANS AND
DENTISTS, INC., Defendant.

No. CA 98–475 JJF.

United States District Court,
D. Delaware.

July 29, 1999.

Gregory M. Sleet, Virginia Gibson–Mason, U.S. Attorney's Office, Wilmington, DE, for United States of America, plaintiff.

Perry F. Goldlust, Heiman, Aber & Goldlust, Wilmington, DE, for Federation of Physicians and Dentists, Inc., defendant.

Lewis H. Lazarus, Morris, James, Hitchens & Williams, Wilmington, DE, for First State Orthopaedics, movant.

Daniel V. Folt, Cozen & O'Connor, Philadelphia, PA, for Principal Health Care of Delaware, Inc., movant.

John A. Parkins, Jr., Richards, Layton & Finger, Wilmington, DE, for Amerihealth of Delaware, Inc., Independence Blue Cross, movants.

Carl Schnee, United States Attorney and Virginia Gibson–Mason, Assistant United States Attorney, of U.S. Department of Justice, Wilmington, DE, Of Counsel, Melvin A. Schwarz, Special Enforcement Counsel, Assistant Attorney General and Steven Kramer, Richard S. Martin, Denise E. Biehn, Michael D. Farber, Heather H. Howard, and Jean Lin, Assistant Attorneys General, of U.S. Department of Justice, Antitrust Division, Washington, D.C., for United States of America.

Perry F. Goldlust, of Heiman, Aber, Goldlust & Baker, Wilmington, DE, Of Counsel, Hal K. Litchford, Donald E. Christopher, and Mary E. Fitzgibbons, of Litchford & Christopher P.A., Orlando, FL, for Defendant Federation of Physicians and Dentists, Inc.

P. Clarkson Collins Jr. and Lewis H. Lazarus, of Morris, James, Hitchens & Williams, Wilmington, DE, for Third Party First State Orthopaedics, P.A.

## OPINION

FARNAN, Chief Judge.

Presently before the Court is the Plaintiff's Letter Motion to Compel the Defendant, the Federation of Physicians and Dentists, Inc., to comply with the Government's First Request for Documents and to compel non-party orthopedic surgeons, orthopedic surgeon group practices and Dr. Connair to comply with certain requests made in subpoenas *duces tecum* served on them. (D.I.65). For the reasons stated below, the Court will grant the Government's motion as it applies to the Defendant and Dr. Connair and deny it as it applies to the non-party surgeons and surgeon practices.

### I. BACKGROUND

In this action, the Government seeks to enjoin 44 of Delaware's 47 orthopedic surgeons from joining the Federation of Physicians and Dentists, Inc. (the "Federation") and bargaining as a unit concerning what they will charge for their services. In 1996, orthopedic surgeons practicing in Delaware sought to enhance their negotiating position with insurance companies by joining the Federation, a labor organization headquartered in Tallahassee, Florida. The Federation is a public-sector labor negotiator that is attempting to move into the private sector by acting as a "third party messenger," or agent, for surgeons and private practice groups.

In 1997, Blue Cross/Blue Shield of Delaware ("Blue Cross"), one of the four major health care insurance companies in Delaware, announced to physicians practicing as orthopedic surgeons in Delaware that it

intended to cut the fees it would pay for the surgeons' services by 20%. Through the Federation, the surgeons refused to accept the proposed lower fees. Subsequently, the Federation tried to negotiate with Blue Cross on behalf of the orthopedic surgeons. Blue Cross refused to negotiate, called the surgeons' action a violation of federal antitrust laws and complained to the United States Department of Justice (the "Government"). The Federation surgeons maintained a united bargaining stance, called Blue Cross' refusal to negotiate a lockout, and notified Blue Cross of their intent to terminate their contracts, a threat they eventually carried out.

The Government investigated Blue Cross' complaint, gathering information through civil investigation demands ("CID") and deposition subpoenas served on healthcare payers, the Federation and the Federation's Delaware members. During the Government's investigation, the surgeons negotiated new contracts with Blue Cross. In August 1998, the Government sued for injunctive relief and a declaratory judgment requesting that the court declare that the alliance of Delaware orthopedic surgeons in the Federation is an illegal conspiracy in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2. The instant dispute arose shortly after the Defendants answered the Complaint.

The disputed discovery requests are directed towards three distinct entities: first, the Defendant Federation; second, the Delaware orthopedic surgeons and group practices who joined the Federation in 1996 and 1997, who are not named as parties in this lawsuit but are alleged to be parties to the conspiracy and have been served with subpoenas *duces tecum* by the Government; and third, Dr. Michael Connair, a Connecticut physician and Federation member who was active in the Federation's recruitment drive in Delaware. All of the entities and individuals served with the Government's discovery requests have filed objections to the requests and subpoenas.

The Government seeks production of the following: Federation documents pertaining to Federation activity in Delaware and other states; phone records documenting contacts among the Federation, Dr. Connair, Delaware orthopedic surgeons and orthopedic group practices during the negotiation impasse period with Blue Cross; recruitment contacts among the Federation, Dr. Connair and Delaware surgeons[1] and notes of comments or comments about recruitment efforts in Delaware made in public gatherings across the country; notes of meetings and recruitment contacts made on behalf of the Federation by Dr. Connair; and information about Federation activities in Delaware after this lawsuit was filed. (D.I.65) The Government also wants to compel each Delaware surgeon or group practice to turn over financial records including revenue and cost statements for 1997 and a list of the top 10 insurance companies they received reimbursements from in 1997, ranked by the amount received. (D.I. 21, Requests 7 & 9)

The Federation objects to the Government's requests as overly broad, duplicative of the information obtained by the CID and burdensome. The Federation requests that the Court limit the Government to events that occurred in Delaware up to the time this lawsuit was filed. First State Orthopaedics P.A., one of the group practices that joined the Federation and received a subpoena *duces tecum* from the Government, objects to the Government's requests for phone records as overly burdensome and a violation of the doctor/patient privilege. First State also objects to the Government's motion to compel production of financial records as overly burdensome and in violation of their privacy. The Federation, on behalf of several surgeons and group practices, joins in First State's objections. Finally, the Federation

---

1. The Government has offered to search the phone records of the Delaware orthopedic surgeons and their practices to alleviate any burden claimed by the objecting entities.

objects to the requests for information from Dr. Connair as overly broad and burdensome and duplicative of the information obtained by the CID.

## II. DISCUSSION

In general, the Federal Rules of Civil Procedure provide for a broad scope of discovery, allowing parties to obtain unprivileged material relevant to the subject of a lawsuit and not limited to evidence that would be admitted at trial, but "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ. P.26(b)(1). The Court can limit discovery if the parties seek duplicative or cumulative information, had ample time to get the information, or the burden outweighs the benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue and the importance of the discovery in resolving the issue. *See generally id.*, at (b)(2). The Court has the discretion to issue a protective order to modify the request or prevent the discovery, if necessary to protect the person served with the request from "annoyance, embarrassment or oppression, or undue burden or expense." *Id.* at 26(c).

### A. Discovery Requests Directed to the Federation and Dr. Connair

■ Proving a conspiracy in the context of an antitrust case by circumstantial evidence requires more than evidence of parallel business decisions. The plaintiff must show an agreement among the participants to fix prices. *See Alvord–Polk v. Schumacher & Co.,* 37 F.3d 996, 1013 (3d Cir.1994). Absent an explicit agreement, the plaintiff can prove an agreement through an inference drawn from circumstantial evidence. Proof of the inference requires a showing that the defendants acted contrary to their own economic interests and had a motivation to enter into an agreement. *See id.*

In this case, the Government is attempting to prove the alleged conspiracy to fix the prices of certain health care services through circumstantial evidence. It alleges that the Federation is the hub of an antitrust conspiracy. The Government has shown and the Federation has admitted that the surgeons made parallel business decisions. (D.I. 1 at ¶ 46 and D.I. 11 at ¶ 46) The Government is now seeking to discover evidence that will ultimately enable the Court to draw the inference of an agreement to fix prices.

■ By its discovery requests, the Government seeks information concerning how the Federation characterized and continues to characterize its recruitment and bargaining efforts in Delaware. Additionally, the Government seeks information concerning the activities of Dr. Connair, who held himself out as a representative of the Federation, came to Delaware to recruit members for the Federation, and contacted Delaware orthopedic surgeons on behalf of the Federation during the showdown with Blue Cross. The Government also wants to know how much money Dr. Connair was paid by the Federation for his efforts.

The Federation "wants to limit its production of relevant documents to pre-complaint information related to the Federation's activities on behalf of orthopedic surgeons in Delaware, concerning Blue Cross, or 'third party messenger' activities in Delaware with respect to Blue Cross." (D.I. 96 at 3) In raising its objections, the Federation has made no showing of the burden or expense it will bear to meet the Government's requests. Likewise, the Federation does not demonstrate how the information previously supplied to the Government through compliance with the CID renders the Government's present discovery requests duplicative or cumulative.

In reviewing the Government's various requests for discovery directed to the Federation and Dr. Connair, the Court is persuaded that more emphasis or weight should be given to the nature of the Gov-

ernment's claims against the Defendants and the Government's right to probe the activities of the Federation and Dr. Connair to legitimately develop evidence of any conspiracy in which the Defendants may have engaged. In this regard, it does not seem unreasonable for the Government to obtain certain records related to the Defendants' efforts to organize orthopedic surgeons in Delaware within a reasonable time frame of the surgeons' and Federation's negotiations with Blue Cross. What the Government is not permitted to do is harass or oppress the Federation and Dr. Connair through the use of discovery tools designed to obtain evidence for this lawsuit. At present, the Court is satisfied that what the Government seeks from the Federation and Dr. Connair is not burdensome nor duplicative to the extent that the Defendants should be shielded by the Court, and therefore, the Court will grant the Government's motion to compel the requested discovery from the Federation and Dr. Connair. However, it is understood that should the Defendants become convinced that the Government is seeking to harass or unduly burden them they may call the Court for a teleconference and be heard on short notice.

### B. Discovery Requests Directed to the Non–Party Surgeons and Practice Groups

#### 1. Financial Records

The Government is seeking individual financial information from orthopedic surgeons and surgeons in group practices in Delaware who joined the Federation. The Government contends this financial information will enable it to demonstrate that the surgeons' assertion they refused Blue Cross' fee reduction on the basis of quality of patient care was merely a pretext; and, that the surgeons and the Federation were really conspiring to fix prices in violation of the antitrust laws.

Non-parties served with a subpoena can file a timely objection and ask the court to quash or modify the subpoena to protect them from disclosing privileged or protected matter, trade secrets or confidential commercial information. See Fed.R.Civ.P. 45(3). Financial information of non-parties in a lawsuit has been held by courts to be private and not routinely available for discovery. "The right of privacy and the right to keep confidential one's financial affairs is well-recognized" when the information involves non-parties, even though they may be allied to the parties. See *Hecht v. Pro-Football Inc.*, 46 F.R.D. 605, 607 (D.D.C.1969); see also *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 890 (E.D.Pa.1981). Courts have shown even more reluctance to force disclosure of financial information when it may be revealed to business rivals, especially when the information would be collateral and not direct proof of the plaintiff's claims. See *Berrie v. Berrie*, 188 N.J.Super. 274, 457 A.2d 76, 81–82 (N.J.Super.Ct.Ch.Div.1983)[2]

■ Although the non-party surgeons from whom the Government seeks discovery all have a stake in the outcome of the case, the Court is inclined to weigh their privacy concerns strongly against the Government's requests. The information sought is private and confidential and discovery would entail the disclosure of sensitive, private information of the non-party surgeons and practices. Finally, the Court finds that the information sought by the Government from the surgeons and practices is only remotely connected to the Government's claims against the Defendants and the counterclaims asserted by the Defendants against the Government. In the Court's view, the Government's pretext argument is speculative and it ignores the reality of malpractice litigation and increased insurance premiums when quality patient care declines. As the *Hecht*

**2.** Though the decision by the New Jersey court is not binding on this Court, New Jersey has adopted rules of procedure similar to the federal rules. Some facts of the case cited are analogous to the present case and the reasoning is persuasive.

court noted, "even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure." *Hecht*, 46 F.R.D. at 607. For these reasons, the Court concludes that the Government's requests for nonparty surgeons' financial information is oppressive and would impose an undue burden on the surgeons and surgeon practices to compile and/or provide it. Therefore, the objections of First State Orthopaedics, P.A. and the surgeons and practices represented by the Federation will be sustained and the Government's motion to compel with regard to such information will be denied.

### 2. Telephone Records

 The Government is also seeking the telephone records of the orthopedic surgeons and the group practices of orthopedic surgeons purportedly to document contacts among themselves, with the Federation and with Dr. Connair during the Federation's recruitment effort, the impasse with Blue Cross and during the Government's CID investigation. The surgeons and surgeon practices object to such discovery on the grounds that it would put an undue burden and expense on the practices, which would have to search through hundreds of pages of phone records dating back 15 months and cull out unresponsive information. (D.I. 77 at ¶ 6). Even when a responsive phone number is found, the surgeons claim the files would have to be researched to ensure that the conversation was not a consultation with another doctor about a patient and that the information is not otherwise protected by the doctor/patient privilege. Delaware recognizes a privilege of confidentiality in the doctor/patient relationship, and such a privilege is not preempted by federal law. *See* Del. R.Evid.Ann 503(b), 510 (Michie, vol.1, 1999).

The Court agrees that the requested discovery would be overly burdensome and finds that the Government's offer to cull through the records is not a viable alternative because the disclosure of a patient's identity could violate the doctor/patient privilege as recognized under Delaware law. Therefore, the objections to Request # 11 by First State Orthopaedics, P.A. and the Federation will be sustained, and the Government's motion to compel will be denied.

### III. CONCLUSION

For the reasons discussed, the Court will grant the Government's motion to compel the Federation to comply with the Government's First Request for Documents and its motion to compel Dr. Connair to comply with the Government's subpoena. However, the Government's motion to compel directed to the individual surgeons and surgeon group practices will be denied.

An appropriate Order will be entered.